1

2

3

4

5

6

7                    **UNITED STATES DISTRICT COURT**

8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10   ADRIENE STAMPS,                    )       NO. ED CV 15-210-E
                                        )
11                 Plaintiff,           )
                                        )
12       v.                             )       **MEMORANDUM OPINION**
                                        )
13   CAROLYN W. COLVIN, ACTING          )       **AND ORDER OF REMAND**
     COMMISSIONER OF SOCIAL SECURITY,   )
14                                      )
                   Defendant.           )
15                                      )
     _____)
16

17

18       Pursuant to sentence four of 42 U.S.C. section 405(g), IT IS

19   HEREBY ORDERED that Plaintiff's and Defendant's motions for summary

20   judgment are denied and this matter is remanded for further

21   administrative action consistent with this Opinion.

22

23                           **PROCEEDINGS**

24

25       Plaintiff filed a complaint on February 4, 2015, seeking review

26   of the Commissioner's denial of disability benefits.  The parties

27   filed a consent to proceed before a United States Magistrate Judge on

28   March 18, 2015.  Plaintiff filed a motion for summary judgment on

July 7, 2015.  Defendant filed a motion for summary judgment on

August 7, 2015.[1]  The Court has taken the motions under submission

without oral argument.  <u>See</u> L.R. 7-15; Order, filed February 5, 2015.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff asserts disability since April 21, 2009, based on

pseudotumor cerebri (<u>i.e.</u>, excess fluid in the brain causing

headaches), depression, a learning disability, and bipolar disorder

(Administrative Record ("A.R.") 71-72, 199).  On January 5, 2011, when

Plaintiff was 17 years old, an Administrative Law Judge ("ALJ")

determined that Plaintiff qualified for child disability benefits from

April 21, 2009, through the date of the decision, finding that

Plaintiff's impairments functionally equaled a listed impairment (A.R.

112-17, 206).  The ALJ directed that a continuing disability review

should be made when Plaintiff reached age 18 (<u>i.e.</u>, on February 23,

2011) (A.R. 117).

On July 26, 2013, a new ALJ found that Plaintiff's disability

ended on January 1, 2012, and did not recur thereafter (A.R. 12-24).

This ALJ found that Plaintiff suffers from severe bipolar disorder,

attention deficit hyperactivity disorder ("ADHD"), borderline

intellectual functioning, and a history of marijuana and alcohol use

(A.R. 14).  According to the ALJ, Plaintiff did not meet or equal any

of the listed impairments (A.R. 14-17).  The ALJ determined that

---

[1]     Defendant's motion violates paragraph VI of the
"Order," filed February 5, 2015.  Defendant and her counsel shall
comply with the Court's orders in the future.

1  Plaintiff retains a residual functional capacity to work at all

2  exertional levels, limited to work involving simple and repetitive

3  tasks, no more than occasional contact with coworkers, and no public

4  contact (A.R. 17-22).  The ALJ found that Plaintiff can perform work

5  that exists in significant numbers in the national economy (A.R. 23-24

6  (adopting vocational expert testimony at A.R. 53-55)).[2]

7

8       In finding Plaintiff not disabled, the ALJ deemed less than fully

9  credible the contrary testimony of Plaintiff and Plaintiff's mother

10 (A.R. 17-22).  The Appeals Council denied review (A.R. 1-3).

11

12                         **STANDARD OF REVIEW**

13

14      Under 42 U.S.C. section 405(g), this Court reviews the

15 Administration's decision to determine if: (1) the Administration's

16 findings are supported by substantial evidence; and (2) the

17 Administration used correct legal standards.  See Carmickle v.

18 Commissioner, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue,

19 499 F.3d 1071, 1074 (9th Cir. 2007); see also Brewes v. Commissioner

20 of Social Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012).

21 Substantial evidence is "such relevant evidence as a reasonable mind

22 might accept as adequate to support a conclusion."  Richardson v.

23 Perales, 402 U.S. 389, 401 (1971) (citation and quotations omitted);

24 _____

25      [2]   The vocational expert testified that if Plaintiff had
   weekly disputes with a supervisor such that Plaintiff would need
26 to leave work for a few hours each week, this would preclude
   employment (A.R. 55).  The vocational expert further testified
27 that if Plaintiff were off task 20 percent of the workday due to
   her mental or psychological problems, this also would preclude
28 employment (A.R. 55).

1 | see also <u>Widmark v. Barnhart</u>, 454 F.3d 1063, 1066 (9th Cir. 2006).

2

3 |   If the evidence can support either outcome, the court may

4 |   not substitute its judgment for that of the ALJ. But the

5 |   Commissioner's decision cannot be affirmed simply by

6 |   isolating a specific quantum of supporting evidence.

7 |   Rather, a court must consider the record as a whole,

8 |   weighing both evidence that supports and evidence that

9 |   detracts from the [administrative] conclusion.

10

11 | <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citations and

12 | quotations omitted).

13

14 | **DISCUSSION**

15

16 |   Plaintiff contends, <u>inter alia</u>, that the ALJ materially erred in

17 | evaluating whether Plaintiff met or equaled Listing 12.05(C), and in

18 | evaluating the testimony of Plaintiff's mother.  For the reasons

19 | discussed below, the Court agrees.  Remand is appropriate.

20

21 | **I.** **The Testimony of Plaintiff and Plaintiff's Mother**

22

23 |   Plaintiff, who attended special education classes through the

24 | 11th grade, testified that she did not like being around other people

25 | or having to talk to people (A.R. 36-38).  She said she has an eighth

26 | grade reading level, and difficulty with spelling and math (A.R. 38-

27 | ///

28 | ///

39).[3]  She received failing grades in school (A.R. 44).[4]  Plaintiff

stated that she did not understand the teacher and would just get mad

and not do the work because she did not understand how to do the work

(A.R. 44).  She said she also gets mad and fails to follow

instructions when others tell her what to do (A.R. 45).

Plaintiff described her mood as depressed and said she was seeing

a therapist once a month, but did not find the therapy helpful (A.R.

39, 44).  Plaintiff said she was not taking any medications for her

psychological condition at the time of the hearing because she was

pregnant (A.R. 39, 42).  She reportedly had been hospitalized twice in

the past year for having violent arguments with her mother (A.R. 39-

40).  Plaintiff claimed she suffers from uncontrolled mood swings and

she fights with and hits others when she gets angry (A.R. 42-43).

Plaintiff supposedly thinks that people around her are talking about

her or looking at her, which makes her respond (A.R. 43-44).  She said

medication helps, but also makes her sleep "most of the time" (A.R.

---

[3]      An Individualized Education Program form dated
February 16, 2011, indicates that Plaintiff (who then was in the
11th grade) has a sixth grade reading level, fourth grade writing
level, and third grade math level (A.R. 220-21; but see A.R. 230
(another examiner stating Plaintiff has a fourth grade reading
level)).

[4]      A school-related psychological assessment from June 10,
2010, reflected that Plaintiff then had three "F" grades, a "no
mark" grade, an "incomplete" grade, and an "A-" grade in Life
Science (A.R. 283-84).  Plaintiff's teacher reportedly could not
assess her work samples because Plaintiff had not turned in any
work (A.R. 285).  Plaintiff reportedly said she had difficulty in
all subjects, had trouble focusing in large groups, and had
problematic headaches (A.R. 285-86).  Testing revealed
Plaintiff's overall adaptive functioning to be within "the very
low range," and it was estimated that she functions in the
borderline to low average ranges of cognition (A.R. 286).

1  42).

2

3      Plaintiff's mother testified that Plaintiff "stays angry most of

4  the time" and cannot control her anger (A.R. 46; see also A.R. 208,

5  211-12 (Plaintiff's mother stating that Plaintiff has anger issues and

6  gets violent and breaks and throws things)).  Plaintiff's mother

7  reportedly cannot calm Plaintiff down when Plaintiff gets angry (A.R.

8  49).  The problem assertedly started when Plaintiff was 13 or 14 years

9  old and has worsened over time (A.R. 46, 50).  Plaintiff's mother said

10  she called the police, fearing for her safety, twice within the past

11  four months (A.R. 47, 49).  On those occasions, Plaintiff reportedly

12  ended up on 72-hour holds in a mental hospital (A.R. 49, 56).  The

13  medication that Plaintiff takes for her mood, Seroquel, helps because

14  it "makes her sleep" (A.R. 50).  Xanax reportedly puts Plaintiff in a

15  daze (A.R. 50).  Plaintiff's mother said that Plaintiff keeps to

16  herself and does not talk very much (A.R. 51).

17

18  II.  **Summary of the Medical Record**

19

20      A.   **Medical Treatment**

21

22      The medical record includes notes from three psychiatric hospital

23  visits.  Plaintiff's first psychiatric hospital visit occurred on

24  February 1, 2011 (A.R. 292-306).  Plaintiff reported having anger

25  issues, getting easily frustrated, and fighting with her mother to the

26  point where police intervened (A.R. 292, 301).  She reported using

27  marijuana and alcohol occasionally, and was non-compliant with

28  medications (A.R. 292, 300).  She denied any prior hospitalizations

1  (A.R. 292).   Her mental status exam noted no abnormalities; she was

2  calm with a neutral mood and appropriate affect (A.R. 293, 300).   She

3  had borderline intelligence "by her report" (A.R. 294).   Her risk

4  rating was "low" (A.R. 295).   Plaintiff was diagnosed with depressive

5  disorder, not otherwise specified, and was discharged home without

6  admission to the hospital (A.R. 296, 302).

7

8       On February 15, 2013, Plaintiff was placed on a 72-hour

9  psychiatric hold (A.R. 390-99).   She reportedly was having a fight

10 with her mother and police were called (A.R. 390).   Plaintiff was not

11 taking any medication due to her pregnancy, and reportedly had been

12 striking her stomach to try to hurt her baby (which Plaintiff denied)

13 (A.R. 390, 399).   Plaintiff reported paranoid ideas and was observed

14 to be nervous (A.R. 393-94, 399).   Plaintiff was diagnosed with a mood

15 disorder, not otherwise specified, and psychosis, not otherwise

16 specified, and discharged home with a "guarded" prognosis (A.R. 392,

17 396).   Her Global Assessment of Functioning ("GAF") score was rated at

18 45 (A.R. 396).   See American Psychiatric Association, Diagnostic and

19 Statistical Manual of Mental Disorders ("DSM-IV-TR") 34 (4th Ed. 2000

20 (Text Revision)).[5]

21

22      Plaintiff experienced a second 72-hour psychiatric hold on

23 March 11, 2013 (A.R. 378-89).   As before, the police were called

24 _____

25      [5]   Clinicians use the GAF scale to rate "psychological,
   social, and occupational functioning on a hypothetical continuum
26 of mental health-illness."   DSM-IV-TR, p. 34.   A GAF between 41
   and 50 indicates "[s]erious symptoms (e.g., suicidal ideation,
27 severe obsessional rituals, frequent shoplifting) OR any serious
   impairment in social, occupational, or school functioning (e.g.,
28 no friends, unable to keep a job)."   Id.

because Plaintiff was fighting her mother and was thought to be a danger to others (A.R. 378). She was still off her medications due to her pregnancy (A.R. 379, 381). Plaintiff reportedly was anxious, had poor insight, judgment, and impulse control, and had paranoid ideas (A.R. 382-83). She was discharged home with a "low" risk of danger to self/others (A.R. 383).

Treating physician Dr. S.G. Sharif prescribed Xanax and Seroquel for Plaintiff on January 23, 2012 (A.R. 325). Plaintiff evidently had been to Dr. Sharif's clinic only once before, on October 13, 2011 (when Dr. Sharif referred Plaintiff to a psychiatrist (A.R. 327)).

On March 12, 2012, another doctor prescribed Seroquel(increased from 150 to 400 mg per day) for bipolar disorder and severe depression with psychotic features (A.R. 353-54, 358-59). Plaintiff reported irritability, chronic anger, explosive outbursts, depressive moods, anxiety with panic, poor concentration and paranoia (including feeling that people are spying on her, that her phone is tapped, and that her television is sending her messages that she is being punished by God) (A.R. 356, 358, 362). She was switched to Topamax as a mood stabilizer (A.R. 360).

Plaintiff presented to the emergency room for treatment in May of 2012, complaining of headache for one day (A.R. 403-05). Although she denied illicit drug use, a drug screening was positive for benzodiazepines and cannabinoids (A.R. 404).
///
///

1          B.   **Medical Evaluations**

2

3      Consultative examining psychiatrist Romualdo R. Rodriguez

4  prepared a psychiatric evaluation dated January 5, 2012 (A.R. 315-21).

5  Plaintiff complained of rage, anger, irritability, depression, and

6  problems with focus and concentration (A.R. 316).  Plaintiff was not

7  then taking medication for her ADHD (A.R. 316, 319).  Plaintiff denied

8  any drug or alcohol problems (A.R. 316).  Plaintiff appeared "somewhat

9  depressed and withdrawn" but did not "necessarily look sad" (A.R.

10 318).  Dr. Rodriguez stated that Plaintiff appeared to be of "at least

11 average intelligence" (A.R. 318).  Dr. Rodriguez diagnosed ADHD, a

12 mood disorder (not otherwise specified), and assigned a GAF score of

13 70 (A.R. 319).[6]  Dr. Rodriguez opined that if Plaintiff were properly

14 treated for her ADHD and cooperates, she could easily recover from her

15 problems within 12 months (A.R. 320).  Dr. Rodriguez opined that

16 Plaintiff would be: (1) capable of understanding, remembering, and

17 carrying out simple one or two-step job instructions, and performing

18 all activities of daily living; (2) slightly limited in her ability to

19 relate and interact with supervisors, coworkers, and the public;

20 (3) moderately limited in her ability to maintain concentration,

21 attention, persistence, and pace; (4) slightly limited in her ability

22 to adapt to normal work stresses; (5) slightly limited in her ability

23 to maintain regular work attendance and perform work activities on a

24

---

25     [6]   A GAF of 61-70 indicates "[s]ome mild symptoms (e.g.,
26 depressed mood and mild insomnia) OR some difficulty in social,
   occupational, or school functioning (e.g., occasional truancy, or
27 theft within the household), but generally functioning pretty
   well, has some meaningful interpersonal relationships."  DSM-IV-
28 TR, p. 34.

consistent basis; and (6) slightly limited in her ability to perform
work activities without special or additional supervision (A.R. 320).

On January 25, 2012, State agency review physician Dr. G. Johnson
opined that Plaintiff would have moderate difficulties maintaining
concentration, persistence, or pace (A.R. 328, 336).  There assertedly
was insufficient evidence for Dr. Johnson to determine whether
Plaintiff would suffer repeated episodes of decompensation (A.R. 336).
In a Mental Residual Functional Capacity Assessment form, Dr. Johnson
indicated that Plaintiff would have moderate limitation in her ability
to understand, remember, and carry out detailed instructions, and in
her ability to maintain attention and concentration for extended
periods (A.R. 339).  Dr. Johnson also believed that Plaintiff would be
moderately limited in her ability to complete a normal workday or
workweek without interruptions based on psychologically-based
symptoms, and to perform at a consistent pace without an unreasonable
number of rest periods (A.R. 340).  Dr. Johnson further indicated that
Plaintiff would have moderate limitations in her ability to accept
instructions and to respond appropriately to criticism from
supervisors, and in her ability to respond to changes in the work
setting (A.R. 340).  Dr. Johnson opined that Plaintiff has adequate
memory, understanding, and concentration to do simple tasks in
competitive employment on a sustained basis (A.R. 341).

Consulative examining psychologist Dr. Paul Martin completed a
psychological evaluation dated May 12, 2012 (A.R. 344-48).  Plaintiff
complained of ADHD, schizophrenia, bipolar disorder, and anxiety (A.R.
344).  She reported having poor attention, concentration, depression,

anxiety, mood swings, and headaches (A.R. 345).  She also reported
hearing voices that tell her to do things (A.R. 345).  She said she
has anger problems and would not hurt herself but would injure someone
else (A.R. 345).  She reported two psychiatric hospitalizations (A.R.
345).  She was taking 600 mg of Seroquel (A.R. 345).  Plaintiff
appeared somewhat guarded and irritable, and seemed "somewhat
disinterested in the [evaluation] process" (A.R. 346).  Plaintiff's
mental status exam showed "fair" attention and concentration, fund of
knowledge, and memory, and concrete thought processes (A.R. 346).
There were no obvious signs of a thought disorder (A.R. 346).

   Plaintiff's full scale IQ reportedly was 65, and her ability to
learn and recall new information was impaired consistent with her IQ
scores (A.R. 347).  Dr. Martin considered Plaintiff's test results "to
be a fair representation" of her "psychological functioning,"
although Dr. Martin added vaguely that Plaintiff "may have tended to
give up easily" (A.R. 346).  Dr. Martin diagnosed ADHD (by history), a
mood disorder (not otherwise specified), borderline intellectual
functioning, and assigned a GAF of 55 (A.R. 347).[7]  Plaintiff's
prognosis was "guarded" (A.R. 347).  Dr. Martin opined that Plaintiff
would have: (1) mild difficulty understanding, remembering, and
carrying out simple instructions; (2) severe difficulty with detailed
and complex instructions; (3) moderate difficulty maintaining

---

[7]   A GAF of 51-60 indicates "[m]oderate symptoms (e.g.,
flat affect and circumstantial speech, occasional panic attacks)
or moderate difficulty in social, occupational, or school
functioning (e.g., temporarily falling behind in schoolwork)."
DSM-IV-TR, p. 34.

attention and concentration; (4) moderately decreased pace; (5) severe
difficulty with pace and persistence; (6) moderate difficulty adapting
to changes in routine work settings; (7) moderate difficulty enduring
stress (from the interview); and (8) moderate impairment in her
ability to interact with public, supervisors, and coworkers (A.R. 347-
48).

On review, state agency physician B. Smith characterized
Plaintiff's effort for Dr. Martin's testing as "poor," and purported
to attribute to this allegedly "poor" effort Dr. Martin's opinion that
Plaintiff would have "severe impairment in persistence" (A.R. 351).
Otherwise, Dr. Smith expressed agreement with Dr. Martin's "medical
source statement" (A.R. 351).

Consultative examining psychologist Dr. Mark Pierce prepared a
psychological evaluation dated December 19, 2012 (A.R. 368-73).  Dr.
Pierce observed that Plaintiff completed her patient history "in
adequate detail, stronger than her special education history would
predict" (A.R. 368).  Plaintiff reported she had bipolar disorder,
anger issues, ADHD, schizophrenia, and that she was not taking any
medications because she was pregnant (A.R. 368-69).  She also reported
one hospitalization for fighting with her mom (A.R. 369).  Plaintiff
admitted trying marijuana in the past because it kept her calm (A.R.
369).  Dr. Pierce had no "corroborating records available for review"
(A.R. 368).

Dr. Pierce stated that Plaintiff was "only passively cooperative"
during her interview, with "under-motivated effort, interest, and

compliance" (A.R. 370).  Her verbal response time was somewhat slowed
(A.R. 370).  Her intellectual functioning was estimated to be in the
borderline range (A.R. 370).  Plaintiff reportedly said she would be
calm and able to work if she took her medications (A.R. 370).
Plaintiff's IQ testing yielded a full scale score of 57, which Dr.
Pierce described as "mostly consistent with the seeming limited energy
[Plaintiff] brings to today's evaluation" (A.R. 371).  Plaintiff did
not "subjectively impress [Dr. Pierce] as developmentally delayed"
(A.R. 371).  Dr. Pierce diagnosed bipolar disorder (by history), and
deferred a diagnosis as to her intellectual functioning, stating that
she appeared "capable to borderline intellectual functioning levels,
with relatively lowered cognitive testing scores" (A.R. 372).  Dr.
Pierce concluded:

> Despite today's relatively challenged performance, she does
> not convince that she does not retain the capacity to
> complete simple and repetitive vocational skills or to adapt
> to minimal changes in a work environment. . . . [Plaintiff]
> would have estimated mild-to-somewhat greater difficulty
> working effectively with others, if properly medicated.  She
> can remember and comply with simple one and two part
> instructions.  Finally, it is estimated that she could
> concentrate just adequately for a regular work schedule for
> a full workweek.

(A.R. 372-73; see also A.R. 374-75 (Medical Source Statement of
Ability to Do Work-Related Activities (Mental) form reflecting no
impairment in Plaintiff's ability to understand, remember, and carry

out simple instructions, "none to mild" impairment in her ability to make simple work-related decisions, mild impairment in her ability to interact appropriately with supervisors and co-workers, and "mild +" impairment in her ability to interact appropriately with the public)).

Plaintiff's therapist provided a letter dated June 17, 2013, opining that Plaintiff's "chronic mental illness has had a major effect on her daily functioning, and makes interaction with the public difficult" (A.R. 400).

III. **Analysis**

A.    **The ALJ's Findings Regarding the Listings Are Insufficient.**

Plaintiff argues, <u>inter alia</u>, the ALJ erred in failing to find that Plaintiff's combination of impairments meet or equal Listing 12.05.  Plaintiff has the burden of demonstrating disability under the Listings.  <u>Roberts v. Shalala</u>, 66 F.3d 179, 182 (9th Cir. 1995), <u>cert. denied</u>, 517 U.S. 1122 (1996); <u>see Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990), <u>superceded by statute on other grounds as stated in Kennedy v. Colvin</u>, 738 F.3d 1172, 1174 (9th Cir. 2013) (burden is on the claimant to show that his or her impairment meets <u>all</u> of the specified medical criteria for a listing, or present medical findings equal in severity to <u>all</u> the criteria for the one most similar listed impairment).

In order to be considered presumptively disabled under Listing 12.05(B) based on "intellectual disability," a claimant must present

1    evidence of (1) "significantly subaverage general intellectual
2    functioning with deficits in adaptive functioning" which initially
3    manifested before the age of 22 (i.e., "during the developmental
4    period"); and (2) a "valid verbal, performance, or full scale IQ of 59
5    or less."  20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(B); see
6    Kennedy v. Colvin, 738 F.3d at 1174 & 1175 n.1 (9th Cir. 2013)
7    (impairment formerly listed under § 12.05 as "mental retardation" has
8    been renamed "intellectual disability," but "[t]he substance of the
9    listing has not changed."); 20 C.F.R. Pt. 404, Subpt. P, App. 1,
10   12.00(D)(6)(c) ("where verbal, performance and full scale IQs are
11   provided in the Wechsler series, we use the lowest of these in
12   conjunction with 12.05").

13

14       As summarized above, Dr. Pierce's testing yielded a full scale IQ
15   of 57 when Plaintiff was 19 years old (A.R. 371).  However, Dr. Pierce
16   clearly doubted the validity of Plaintiff's test scores, given the
17   "seemingly limited energy" Plaintiff reportedly exerted (A.R. 371).
18   Plaintiff did not "subjectively impress" Dr. Pierce as
19   "developmentally delayed" (A.R. 371).  Ultimately, the ALJ agreed with
20   Dr. Pierce's doubts and expressly found the IQ score of 57 not to be
21   valid (A.R. 16).  The ALJ cited Plaintiff's earlier full scale IQ
22   score of 65 as evidence suggesting that the lower score was not valid
23   (A.R. 16).  On this record, therefore, the ALJ did not err in failing
24   to find that Plaintiff met or equaled Listing 12.05(B).  See Thresher
25   v. Astrue, 283 Fed. App'x 473, 475 & n.6 (9th Cir. 2008) ("We do not
26   doubt that an ALJ can decide that an IQ score is invalid.").
27   ///
28   ///

1    It appears, however, that the ALJ did err in the evaluation of
2    whether Plaintiff met or equaled Listing 12.05(C).  Listing 12.05(C)
3    requires: (1) "[a] valid verbal, performance, or full scale IQ of 60
4    through 70"; (2) "a physical or other mental impairment imposing an
5    additional and significant work-related limitation of function"; and
6    (3) proof that the claimant's "significantly subaverage general
7    intellectual functioning with deficits in adaptive functioning
8    initially manifested . . . before age 22."  20 C.F.R. Pt. 404, Subpt.
9    P, App. 1, 12.05(C).

10

11    As summarized above, Dr. Martin's testing yielded a full scale IQ
12    of 65 when Plaintiff was 19 years old (A.R. 347).  Unlike Dr. Pierce,
13    Dr. Martin found Plaintiff's test results to be a "fair representation
14    of [Plaintiff's] psychological functioning," "although she may have
15    tended to give up easily" (A.R. 346).  Further, Dr. Martin's testing
16    of Plaintiff's memory indicated her ability to learn and recall new
17    information was "in the impaired range consistent with IQ test scores"
18    (A.R. 347).  In Dr. Martin's opinion, Plaintiff has "borderline
19    intellectual functioning."  See A.R. 347.

20

21    The ALJ did not expressly reject the validity of Dr. Martin's IQ
22    testing.  See A.R. 16.  The ALJ did reference Dr. Martin's vague
23    speculation that Plaintiff "may have tended to give up easily," but
24    did not expressly reject Dr. Martin's conclusion that the test results
25    were a "fair representation" of Plaintiff's functioning.  In fact, the
26    ALJ relied on Dr. Martin's IQ test results as part of the basis for
27    rejecting Dr. Pierce's IQ test results.  Thus, at a minimum, the
28    record is ambiguous regarding whether the ALJ accepted Dr. Martin's IQ

1  test results as valid.   In finding Plaintiff did not meet Listing

2  12.05(C), the ALJ reasoned that, even if Dr. Martin's IQ test scores

3  for Plaintiff were credited, Plaintiff supposedly would not have the

4  requisite "other" impairment imposing "an additional and significant

5  work-related limitation of function" (A.R. 16-17).   Substantial

6  evidence fails to support this reasoning.

7

8      The ALJ found that Plaintiff suffers from "severe" borderline

9  intellectual functioning, and also "severe" bipolar disorder and

10 "severe" ADHD, which "more than minimally limit [Plaintiff's] ability

11 to perform basic work activities. . . ." (A.R. 14).   Assuming the

12 validity of the 65 full scale IQ, Plaintiff's "severe" bipolar

13 disorder and "severe" ADHD would meet the second prong of section

14 12.05(C).   See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987)

15 (any "severe" impairment meets or equals the second prong of section

16 12.05(C) of the Listings because "an impairment imposes a significant

17 work-related limitations of function when its effect on a claimant's

18 ability to perform basic work activities is more than slight or

19 minimal"); accord Martinez v. Colvin, 2015 WL 4662620, at *7 (E.D.

20 Cal. Aug. 5, 2015) (finding of a severe impairment other than

21 "borderline intellectual functioning" is a per se finding of an

22 "impairment imposing additional and significant work-related

23 limitations of functions" per Listing 12.05(C)) (citations omitted);

24 Strickland v. Colvin, 2015 WL 1728354, at *4 (C.D. Cal. Apr 15, 2015)

25 (same); Randle v. Colvin, 2014 WL 7150702, at *2 n.4 (C.D. Cal.

26 Dec. 12, 2014) (same where parties did not dispute second prong of

27 section 12.05(C)).   The ALJ erred in finding otherwise.   As for the

28 third prong of Listing 12.05(C), it appears undisputed that

1  Plaintiff's subaverage intellectual functioning and deficits in
2  adaptive functioning initially manifested before age 22.

3

4      In attempted avoidance of the conclusion that the ALJ erred in
5  the evaluation of whether Plaintiff met Listing 12.05(C), Defendant
6  argues that the evidence failed to show that either Plaintiff's ADHD
7  or bipolar disorder caused any additional and significant work-related
8  limitation of function beyond those limitations caused by Plaintiff's
9  borderline intellectual functioning.  See Defendant's Motion, p. 8.
10 Defendant's argument (and the ALJ's similar assertion see A.R. 17)
11 cannot be reconciled with the case authorities cited above or with the
12 plain language of Listing 12.05(C).  See id.  Moreover, the ALJ did
13 find significant work-related limitations of function seemingly not
14 resulting from Plaintiff's borderline intellectual functioning, i.e.
15 "no public contact" and "no more than occasional contact with
16 coworkers" (A.R. 17).

17

18     Defendant also argues that no medical source opined that
19 Plaintiff met the criteria of Listing 12.05(C).  See Defendant's
20 Motion, pp. 9-10.  This argument presents a non sequitur.  If
21 Plaintiff's IQ score of 65 at age 19 is "valid," the ALJ's finding
22 that Plaintiff has severe mental impairments beyond her borderline
23 intellectual functioning refute as a matter of law any argument that
24 Plaintiff fails to meet Listing 12.05(C).  Under these circumstances,
25 an absence of corroborating medical opinion would be of no moment.
26 Courts must conclusively presume disability when a claimant meets or
27 equals a listing.  Bowen v. City of New York, 476 U.S. 467, 471 (1986)
28 ("if a claimant's condition meets or equals the listed impairments, he

1   is conclusively presumed to be disabled and entitled to benefits");

2   Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993) ("if a

3   claimant's impairment either meets the listed criteria for the

4   diagnosis or is medically equivalent to the criteria of the diagnosis,

5   he is conclusively presumed to be disabled") (citations omitted).

6

7        Thus, the ALJ's determination regarding the validity of Dr.

8   Martin's IQ testing is critical to the listings evaluation.  If the

9   ALJ accepts Dr. Martin's IQ testing as valid, Plaintiff would be

10  presumptively disabled on the present record.  The ALJ neither

11  expressly accepted nor expressly rejected the validity of Dr. Martin's

12  IQ testing.  If the ALJ intended to reject the validity of the

13  testing, on remand the ALJ should do so expressly and should state

14  reasons beyond Dr. Martin's vague speculation that Plaintiff "may have

15  tended to give up easily."  As previously indicated, such speculation

16  apparently did not alter Dr. Martin's opinion that the test results

17  were "a fair representation" of Plaintiff's "psychological

18  functioning."[8]

19

20  **B.    The ALJ's Credibility Findings Are Insufficient.**

21

22       In evaluating the credibility of a claimant's assertions of

23  functional limitations, the ALJ must consider lay witnesses' reported

24  observations of the claimant.  See Stout v. Commissioner, 454 F.3d

25  1050, 1053 (9th Cir. 2006) ("Stout"); Regennitter v. Commissioner of

26  _____

27       [8]    On remand, the ALJ may wish to recontact Dr. Martin to
    attempt to clarify any perceived ambiguity in Dr. Martin's stated
28  views regarding the validity of the testing.

<u>Social Sec. Admin.</u>, 166 F.3d 1294, 1298 (9th Cir. 1999); <u>see also</u>
Social Security Ruling ("SSR") 96-7p ("the adjudicator must consider
the entire case record, including . . . information provided by . . .
other persons about the symptoms and how they affect the individual").
"[F]riends and family members in a position to observe a claimant's
symptoms and daily activities are competent to testify as to [the
claimant's] condition."   <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918-19 (9th
Cir. 1993) ("<u>Dodrill</u>"); 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4)
(observations by "non-medical sources" such as "spouses, parents and
other caregivers, siblings, other relatives, friends, neighbors, and
clergy" may be used to "show the severity of your impairment(s) and
how it affects your ability to work").


"[T]he ALJ can reject the testimony of lay witnesses only if he
gives reasons germane to each witness whose testimony he rejects."
<u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1996) ("<u>Smolen</u>").
"Further, the reasons 'germane to each witness' must be specific."
<u>Bruce v. Astrue</u>, 557 F.3d 1113, 1115 (9th Cir. 2009) ("<u>Bruce</u>")
(quoting <u>Stout</u>, 454 F.3d at 1054 ("the ALJ, not the district court, is
required to provide specific reasons for rejecting lay testimony")).


In the present case, the ALJ failed to provide "specific" reasons
"germane" to the rejection of the testimony of Plaintiff's mother.
The ALJ acknowledged that Plaintiff's mother testified: (1) Plaintiff
has anger issues that have worsened with age; (2) Plaintiff's mood
changes quickly with no triggers; (3) Plaintiff makes her mother fear
for her own safety; and (4) Plaintiff's medications cause Plaintiff to
sleep (A.R. 18).  The ALJ gave "little weight" to this testimony

1  because the testimony assertedly was "not consistent with the medical

2  evidence of record" (A.R. 22).

3

4      The ALJ's assertion that the testimony was "not consistent with

5  the medical evidence of record" fails to furnish a sufficiently

6  specific reason for discrediting the testimony.  See Bruce, 557 F.3d

7  at 1116 & n.1 (overturning ALJ's rejection of lay witness testimony

8  where the ALJ reasoned, in part, that the witness' statements were

9  "not supported by the objective medical evidence") (citing Dodrill and

10  Smolen); see also Williams v. Astrue, 493 Fed. App'x 866, 869 (9th

11  Cir. 2012) (reaffirming same); 20 C.F.R. §§ 404.1513(d)(4),

12  404.1529(c)(3), 416.913(d)(4); 416.929(c)(3); SSR 95-5p ("Because

13  symptoms sometimes suggest a greater severity of impairment than can

14  be shown by objective medical evidence alone, careful consideration

15  must be given to any available information about symptoms.").[9]

16  Moreover, many of the available medical records, including records

17  regarding Plaintiff's psychiatric hospitalizations, appear consistent

18  with the mother's testimony.

19

20      The Court is unable to find harmless the ALJ's error regarding

21  the mother's testimony.  See Molina v. Astrue, 674 F.3d 1104, 1115

22  (9th Cir. 2012) ("an ALJ's error is harmless where it is

23  _____

24      [9]   Defendant suggests that the principles discussed in

25  Smolen are inapplicable because Smolen assertedly depended on SSR
    83-13, which has been superseded.  See Defendant's Motion, p. 21

26  n.8 (citing Smolen, 80 F.3d at 1289).  However, "the policy
    interpretations contained in [SSR 83-13] were codified in 20

27  C.F.R. §§ 404.1529(c)(3), [and] 416.929(c)(3), and remain valid."
    See Massey v. Commissioner Social Sec. Admin., 400 Fed. App'x

28  192, 194 n.1 (9th Cir. 2010) (also citing SSR 95-5p, p. *1).

1    inconsequential to the ultimate non-disability determination")
2    (citations and quotations omitted).  As indicated in footnote 2 above,
3    the vocational expert testified that if a person had particular
4    additional limitations, these limitations would preclude work (A.R.
5    55).  Crediting the testimony of Plaintiff's mother might well
6    establish these same additional limitations.

7

8         An ALJ sometimes may reject a lay witness' observations for the
9    same reasons the ALJ properly has rejected a claimant's similar
10   allegations.  See Valentine v. Commissioner Social Sec. Admin., 574
11   F.3d 685, 693-94 (9th Cir. 2009).  Here, however, the ALJ's reasons
12   for rejecting Plaintiff's testimony were also inadequate.

13

14        The ALJ found Plaintiff's testimony not credible because
15   Plaintiff:

16

17        [had] not received the type of treatment one would expect
18        for a totally disabled individual. . . . [A]fter being
19        placed on a psychiatric hold in February of 2011, the
20        claimant did not receive any mental health treatment for her
21        condition until January of 2012.  This is inconsistent with
22        her allegations of disabling symptoms and functional
23        limitations and diminishes the credibility of those
24        allegations.

25

26   (A.R. 18).  The ALJ stated that Plaintiff had "failed to follow
27   treatment recommendations," that she was "abusing drugs and alcohol"
28   during the time of her psychiatric hospitalizations, and that she

assertedly "never reported excessive drowsiness as a side effect of her medication" (A.R. 18).

A limited course of treatment sometimes can justify the rejection of a claimant's testimony, at least where the testimony concerns physical problems.  See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of consistent treatment such as where there was a three to four month gap in treatment properly considered in discrediting claimant's back pain testimony); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (in assessing the credibility of a claimant's pain testimony, the Administration properly may consider the claimant's failure to request treatment and failure to follow treatment advice) (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc)); Matthews v. Shalala, 10 F.3d 678, 679-80 (9th Cir. 1993) (permissible credibility factors in assessing pain testimony include limited treatment and minimal use of medications); see also Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (absence of treatment for back pain during half of the alleged disability period, and evidence of only "conservative treatment" when the claimant finally sought treatment, sufficient to discount claimant's testimony).

However, the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citations and quotations omitted); see also Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (quoting Nguyen v. Chater); McTaggart v. Commissioner of

1  Social Sec. Admin., 480 Fed. App'x 459, 461 n.2 (9th Cir. 2012)
2  (reliance on fact that claimant rarely sought mental health counseling
3  as a ground for adverse credibility finding deemed "erroneous in light
4  of Nguyen v. Chater"); Regennitter v. Commissioner of Social Sec.
5  Admin., 166 F.3d at 1299-1300 (same; also noting that mental illness
6  is notoriously underreported); Martinez v. Colvin, 2014 WL 3809048, at
7  *12 (D. Ariz. Aug. 1, 2014) (finding noncompliance with mental health
8  treatment as an inappropriate basis on which to discount claimant's
9  credibility); Rosas v. Colvin, 2014 WL 3736531, at *11 (C.D. Cal.
10 July 28, 2014) (claimant's limited treatment for mental illness not by
11 itself a clear and convincing reason for rejecting claimant's
12 credibility); Etter v. Colvin, 2014 WL 2931145, at *2-3 (C.D. Cal.
13 June 26, 2014) (finding ALJ's residual functional capacity assessment
14 not supported by substantial evidence where ALJ gave "little" weight
15 to the psychiatric consultative examiner's opinion and, in doing so,
16 highlighted that the claimant had not received mental health
17 treatment; citing, inter alia, Nguyen v. Chater); accord Pate-Fires v.
18 Astrue, 564 F.3d 935, 945 (8th Cir. 2009) ("a mentally ill person's
19 noncompliance with psychiatric medications can be, and usually is, the
20 result of the mental impairment itself and, therefore, neither willful
21 nor without a justifiable excuse") (internal citations and quotations
22 omitted); Kangail v. Barnhart, 454 F.3d 627, 630 (7th Cir. 2006)
23 ("mental illness in general . . . may prevent the sufferer from taking
24 her prescribed medicines or otherwise submitting to treatment")
25 (internal citations omitted).

26

27      In the present case, the ALJ's reliance on Plaintiff's limited
28 mental health treatment, alleged failure to report side effects and

1   occasional failure to take her prescribed medications were not

2   adequate reasons for rejecting Plaintiff's credibility.  See id.  The

3   Court also observes that, during at least a part of the time that

4   Plaintiff was treated psychiatrically, she reportedly was not taking

5   any medications due to her pregnancy.  Additionally, the ALJ found

6   that Plaintiff's history of marijuana and alcohol use was not material

7   to the disability determination (A.R. 21).

8

9       **C.   Remand is Appropriate.**

10

11       Because the circumstances of this case suggest that further

12  administrative review could remedy the ALJ's errors, remand is

13  appropriate.  McLeod v. Astrue, 640 F.3d 881, 888 (9th Cir. 2011); see

14  Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) ("Connett")

15  (remand is an option where the ALJ fails to state sufficient reasons

16  for rejecting a claimant's excess symptom testimony); but see Orn v.

17  Astrue, 495 F.3d 625, 640 (9th Cir. 2007) (citing Connett for the

18  proposition that "[w]hen an ALJ's reasons for rejecting the claimant's

19  testimony are legally insufficient and it is clear from the record

20  that the ALJ would be required to determine the claimant disabled if

21  he had credited the claimant's testimony, we remand for a calculation

22  of benefits") (quotations omitted); see also Brown-Hunter v. Colvin,

23  2015 WL 4620123, at *7-8 (9th Cir. Aug. 4, 2015) (discussing the

24  requirements for the "extreme remedy" of crediting testimony as true

25  and remanding for an immediate award of benefits); Ghanim v. Colvin,

26  763 F.3d 1154, 1166 (9th Cir. 2014) (remanding for further proceedings

27  where the ALJ failed to state sufficient reasons for deeming a

28  claimant's testimony not credible); Garrison v. Colvin, 759 F.3d at

1   1021 (court may "remand for further proceedings, even though all
2   conditions of the credit-as-true rule are satisfied, [when] an
3   evaluation of the record as a whole creates serious doubt that a
4   claimant is, in fact, disabled"); Vasquez v. Astrue, 572 F.3d 586,
5   600-01 (9th Cir. 2009) (a court need not "credit as true" improperly
6   rejected claimant testimony where there are outstanding issues that
7   must be resolved before a proper disability determination can be
8   made); see generally INS v. Ventura, 537 U.S. 12, 16 (2002) (upon
9   reversal of an administrative determination, the proper course is to
10  remand for additional agency investigation or explanation, except in
11  rare circumstances); Treichler v. Commissioner, 775 F.3d 1090, 1101
12  n.5 (9th Cir. 2014) (remand for further administrative proceedings is
13  the proper remedy "in all but the rarest cases").
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

**CONCLUSION**

For all of the foregoing reasons,[10] Plaintiff's and Defendant's motions for summary judgment are denied and this matter is remanded for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 16, 2015.

_____
/S/
CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[10]    The Court has not reached any other issue raised by Plaintiff except insofar as to determine that reversal with a directive for the immediate payment of benefits would not be appropriate at this time.  "[E]valuation of the record as a whole creates serious doubt that [Plaintiff] is in fact disabled." See Garrison v. Colvin, 759 F.3d at 1021.